IN THE UNITED STATES DISRICT COURT FOR THE
SOUTHERN DISTRICT OF IOWA (WESTERN DIVISION)

| | | |
|---|---|---|
| STACEY C. DELANCEY, | ) | Case No. 1:13-cv-29 |
| | ) | |
| Plaintiff | ) | **COMPLAINT AND REQUEST** |
| | ) | **FOR JURY TRIAL** |
| KNUDSON INVESTMENT CO. INC., | ) | |
| an Iowa Corporation, KNUDSON | ) | |
| MANAGEMENT CO., INC., an Iowa | ) | |
| Corporation, CHRISTIE JOHNSEN, | ) | |
| Individually, and RICHARD KNUDSON, | ) | |
| Individually, | ) | |
| Defendants | ) | |

## JURISDICTION AND VENUE

1. Plaintiff Stacey DeLancey (hereinafter "Plaintiff") seeks monetary, declaratory and injunctive relief against Knudson Investment Company, Inc., ("Knudson Investment"), Knudson Management Co., Inc. ("Knudson Management") Richard Knudson ("Knudson") and Christie Johnsen ("Johnsen") (hereinafter referred to Collectively as "Defendants") for violating the Fair Housing Act, as amended, 42 U.S.C. § 3601, et seq. ("FHA"), and the Iowa Civil Rights Act, Iowa Code § 216 et. seq. ("ICRA") for violating the terms of a residential lease agreement between Plaintiff and Defendants, for interfering with Plaintiff's right to quiet enjoyment of the leased premises, and for constructively terminating Plaintiff's residential lease with Defendants.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 3613.

3. This Court has supplemental jurisdiction to determine Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 and Iowa Code § 216.16A(2) because the

claims relate to Plaintiff's federal law claim such that they form a part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2), because the claims alleged arose within the Southern District of Iowa.

## PARTIES

5. Plaintiff was at all relevant times a resident of and domiciled in Council Bluffs, Iowa. Plaintiff suffers from post traumatic stress disorder, bipolar disorder and psychosis and thus is a person with a disability[1] within the meaning of 42 U.S.C. § 3602(h) and Iowa Code § 216.2.

6. Defendants are engaged in the business of owning, operating, managing and/or renting multifamily properties for residential use as defined in 42 U.S.C. § 3603(c), including the West Park Apartments located at 2200 2nd Avenue in Council Bluffs, Iowa ("West Park"). The rental units at West Park are dwellings within the meaning of 42 U.S.C. § 3602.

7. At all times relevant herein, Defendant Knudson Investment, 29 South Main Street, Council Bluffs, Iowa, was an Iowa Corporation, owned and/or operated by Defendant Johnsen, its president, and/or Defendant Knudson. Knudson Investment owned and operated West Park during all relevant times.

8. Defendant Knudson Management, 29 South Main Street, Council Bluffs, Iowa, was at all times relevant an Iowa Corporation owned and/or operated by Johnsen, its president, and Defendant Knudson. Knudson Management was responsible for operating and managing rental properties owned by Knudson

---

[1] The term "disability" has the same meaning as the term "handicap," as defined by 42 U.S.C. § 3602(h).

Investment, including West Park Apartments.

9. Defendant Johnsen is an individual residing at 3253 Highway 44, Logan, Harrison County, Iowa. At all relevant times, Johnsen was the president of Knudson Investment and Knudson Management.

10. Defendant Knudson is an individual residing in Nebraska. Defendant Knudson was at all times relevant herein a property manager for Defendant's rental properties, including West Park Apartments in Council Bluffs, Iowa.

11. On or about December 29, 2013, Plaintiff and Knudson Investment entered a one-year lease for a two-bedroom apartment unit at West Park Apartments, commencing January 1, 2013 and ending on December 31, 2013 (the "First Lease"). The First Lease prohibited Plaintiff from keeping animals or pets of any kind anywhere on the premises at any time.

12. On or about March 10, 2013, Plaintiff and Defendants entered into a lease for a different apartment unit at West Park (the "Second Lease"), which superseded and replaced the First Lease. The term of the Second Lease had the substantially the same terms as the First Lease and also prohibited Plaintiff from keeping animals or pets of any kind anywhere on the premises at any time.

## ALLEGATIONS OF FACT

**A.  Background**

13. Plaintiff is a single mother of two children and an abuse survivor. Her daughter is 10 years old. Her son Jas born on April 7, 2013.

14. Plaintiff suffered sexual abuse as a child and domestic abuse during her previous marriage. She suffers from post-traumatic stress disorder, which

causes her to experiences night terrors and relive the trauma of her abuse.

15. At the time the parties entered into the first lease, Plaintiff was diagnosed with post-traumatic stress disorder, bipolar disorder and psychosis (collectively referred to as "mental disabilities"). Plaintiff's mental disabilities caused her to experience intense anxiety, fatigue, depression and emotional instability.

16. Plaintiff's doctor recommended that Plaintiff live with a therapy animal to help ameliorate the symptoms of her mental health impairments. Plaintiff adhered to her doctor's recommendation and purchased a therapy cat named "Breezy".

### B. Plaintiff's Tenancy with Defendants

17. At all times relevant to this Complaint, each of the Defendants owned and/or were responsible for maintenance, repair, replacement, administration, operation and leasing of the units at West Park.

18. At all times relevant to this Complaint, Defendants enforced a strict policy prohibiting residents from keeping pets on the premises of the Complex.

19. At the time Plaintiff entered into the First Lease with Defendants, she told Defendants about her mental disabilities and the symptoms of her disabilities.

20. At the time Plaintiff entered into the First Lease with Defendants, she asked Defendants to grant her a reasonable accommodation by waiving the "no pets" policy and allowing her to keep a therapy cat in her apartment. She offered to provide medical documentation to support her request.

21. Defendants refused to waive the "no pets" policy to allow Breezy to

live in Plaintiff's apartment. Knudson told Plaintiff to wait for six months.

22. Plaintiff and her 10-year old daughter moved into an apartment at West Park on December 29, 2012. Plaintiff was pregnant with her son at the time.

23. During her tenancy at the first West Park apartment, Plaintiff was routinely disrupted by noisy neighbors who fought and smoked in their apartment. Plaintiff complained to Defendants about the smoke and noise. Defendants responded by asking her to move to a different apartment.

24. Plaintiff moved into a second apartment at West Park on March 10, 2013. When she moved into the Apartment, Defendants told her that there were mice in the apartment.

25. When Plaintiff and her daughter moved into the second apartment, they discovered that large rats actually lived there. The rats made noise, crawled through the apartment and apartment walls, and defecated all over the floors, countertops and dishes. The Plaintiff's daughter was so fearful of the large rats that she would not go into the kitchen where the infestation was concentrated.

26. Plaintiff's apartment also had a back door that would not open and a broken windowpane that let cold winter air into the apartment.

27. On March 30, 2013 Plaintiff complained to Defendants that rats were in her apartment. Knudson told Plaintiff that he would send over a pest control service to fix the problem on April 5, 2013. However, no pest control service came to Plaintiff's apartment on April 5th.

28. On April 23, 2013, Plaintiff called Knudson and told him that the rat problem had not been addressed or corrected. Knudson gave rat traps to Plaintiff

and assured her that he would fix the problem soon.

29. On April 26, 2013, Plaintiff contacted Knudson again and told him that the infestation problem had continued and that she could still hear rats crawling through her apartment. Defendants failed to take any further action to correct the rat problem. The infestation problem continued.

30. On April 29, 2013, Plaintiff notified the Defendants in writing that she intended to vacate her apartment if they failed to correct the rat infestation.

31. The Plaintiff also complained about the locked door and broken window but Defendant refused to fix the problem.

32. The rat infestation disrupted Plaintiff's quiet enjoyment of her apartment. The stress of living with rats aggravated the symptoms of Plaintiff's post-traumatic stress disorder, bipolar disorder and psychosis. In March of 2013, Plaintiff had to check into a psychiatric unit for monitoring and evaluation. Due to the stress, she gave birth to her son about one month before his due date. She reasonably feared that rats in her apartment carried diseases that would infect her newborn baby, who did not have adequate time to build up his immune system.

33. After approximately 30 days of Plaintiff complaining to Defendants and asking them to fix the rat problem, Defendants still had not fixed the rat problem in her apartment. In light of the health and safety issues posed by the rats, and the negative impact it had on Plaintiff's mental health, Plaintiff had no choice but to vacate the premises.

34. On or about May 5, 2013, as a result of Defendants' failure to correct the rat problem, Plaintiff moved her family out of the apartment to seek other living

arrangements. In May of 2013, Plaintiff was forced to move her children into the Stephen Center Shelter in Omaha, Nebraska for about ten days and the Micah House in Council Bluffs, Iowa for about two weeks.

35. When Plaintiff vacated the premises, she sent Defendants a written notice and request to return her damage deposit. Despite Plaintiff's request, Defendants wrongfully withheld her damage deposit of $550.00. Defendants also wrongfully charged her an additional $150.00 for alleged damages and costs to clean her apartment.

36. As a result of Defendant's conduct, Plaintiff suffered serious emotional distress and was forced to check into a treatment center for a nervous breakdown. Plaintiff's daughter had to attend therapy sessions to cope with the trauma from living with rats.

37. As a result of Defendant's conduct, Plaintiff lost important housing opportunities and other special and general damages.

38. Based on information and belief, Defendant has enforced its "no pets" policy against other tenants residing at West Park.

### COUNT I: VIOLATION OF FHA, 42 U.S.C. § 3604

39. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-38, above.

40. Plaintiff is an aggrieved person, as defined in 42 U.S.C. § 3602(i).

41. The conduct of Defendants as described above including, but not limited to, denying Plaintiff the opportunity to live with a therapy animal in her apartment, ignoring her requests for an accommodation, placing her in an

apartment unit infested with rats, and ignoring her requests to correct the infestation problem and constructively evicting her amounts to:

    a. A refusal to rent, making housing unavailable, and/or denying housing on the basis of disability status in violation of 42 U.S.C. § 3604(a); and

    b. Discrimination in the terms, conditions or privileges of rental of dwelling or in the provision of services on the basis of disability status in violation of 42 U.S.C. § 3604(b).

42. The discriminatory conduct described herein was intentional, willful, and/or taken in disregard of Plaintiff's rights.

43. Plaintiff has suffered injuries and damages as a result of Defendants' conduct which will be shown at trial, including moving and relocation expenses, undue hardship, great emotional distress, humiliation, embarrassment, inconvenience, and loss of enjoyment of life, which entitles her to compensatory and punitive damages.

## COUNT II: VIOLATION OF 42 U.S.C. § 3617

44. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-38, above.

45. The conduct of Defendants as described above including, but not limited to constructively evicting Plaintiff and ignoring her requests for an accommodation amounts to coercion, intimidation, threatening or interfering with Plaintiff in the exercise or enjoyment of her rights granted by the Fair Housing Act, as amended, in violation of 42 U.S.C. § 3617.

46. The discriminatory conduct described herein was intentional, willful,

and/or taken in disregard of Plaintiff's rights.

47.     Plaintiff has suffered injuries and damages as a result of Defendants' conduct which will be shown at trial, including moving and relocation expenses, undue hardship, great emotional distress, humiliation, embarrassment, inconvenience, and loss of enjoyment of life, which entitles her to compensatory and punitive damages.

### COUNT III:  FAILURE TO GRANT REASONABLE ACCOMMODATIONS

48.      Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-38, above.

49.     The above-described conduct was a refusal to make reasonable accommodations in Defendant's rules, policies, practices, or services, which may be necessary to afford Plaintiff an equal opportunity to use and enjoy a dwelling in violation of the FHA.

50.     Plaintiff demonstrated, and/or would have demonstrated but for Defendant's refusal to consider her request, to Defendants that her accommodation request to live with a therapy animal in her Apartment was necessary to afford her equal opportunity to use and enjoy her apartment because living with a therapy animal would ameliorate the post traumatic stress disorder, bipolar disorder and psychosis stemming from Plaintiff's disability.

51.     The requested accommodation would pose no undue financial and administrative burden on Defendants nor would it require a fundamental alteration of any kind to any rule, regulation or program operated by Defendants.

52.     Without reasonable accommodation from Defendants, Plaintiff was

forced to move out of the apartment unit. Such actions have had a detrimental effect on her because of her disability.

53. The conduct described herein was intentional, willful, and/or taken in disregard of the rights of others.

54. As a direct result of Apartment's refusal to reasonably accommodate Plaintiff, she is an aggrieved person, as defined in 42 U.S.C. § 3602(i), and have suffered injuries and damages as will be shown at trial.

55. Plaintiff has suffered injuries and damages as a result of Defendants conduct and "no pets policy", which will be shown at trial, including lost wages, moving and relocation expenses, undue hardship, great emotional distress, humiliation, embarrassment, inconvenience, and loss of enjoyment of life, which entitles her to compensatory and punitive damages.

### COUNT IV: VIOLATION OF IOWA CIVIL RIGHTS ACT
### IOWA CODE § 216 et seq.

56. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-38, above.

57. Plaintiff is an aggrieved person, as defined in Iowa Code § 216.16A(2).

58. The conduct of Defendants as described above including, but not limited to refusing to let Plaintiff live with a comfort animal and failing to eliminate the rat infestation in her apartment, amounts to:

   a. A refusal to rent or lease, making unavailable and/or denying housing on the basis of disability in violation of Iowa Code § 216.8(1)(a) and § 216.8A(3)(a);

   b. Discrimination in the terms conditions or privileges of rental of a dwelling

10

        or in the provision of services or facilities on the basis of Defendant's disability in violation of Iowa Code § 216.8(1)(b) and § 216.8A(3)(b); and

    c. A refusal to make reasonable accommodations in rules, policies, practices necessary to afford equal opportunity to use and enjoyment of a dwelling in violation of Iowa Code § 216A(3)(c)(2).

59. The discriminatory conduct described herein was intentional, willful, and/or taken in disregard of Plaintiff's rights.

60. Plaintiff has suffered injuries and damages as a result of Defendants conduct which will be shown at trial including lost wages, moving and relocation expenses, undue hardship, great emotional distress, humiliation, embarrassment, inconvenience, and loss of enjoyment of life, which entitles her to compensatory and punitive damages.

## COUNT V: BREACH OF LEASE/WRONGFUL EVICTION

61. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in paragraphs 1-38, above.

62. Among other express covenants contained in Plaintiff's lease with Defendant Knudson Investment was the usual covenant of quiet and peaceable enjoyment, whereby Defendant Knudson Investment gave and granted Plaintiff the right to quiet and peaceable occupation and enjoyment of the leased premises during her possession of the premises.

63. Plaintiff was not permitted by Defendants to peaceably occupy and quietly enjoy the leased premises and was constructively evicted on or about May 5, 2013. Thereafter, the Plaintiff was required to find a different living arrangement.

64.     The acts of Defendants mentioned above amounted to a breach of the terms of the first and second leases between Plaintiff and Defendant Knudson.

65.     The acts of Defendants mentioned above were directed at the Plaintiff were intentional, willful, wanton and/or taken in disregard of Plaintiff's rights and/or safety.

66.     As a result of Defendants' breach of lease terms, breach of the covenant of quiet enjoyment and constructive eviction of Plaintiff, Plaintiff suffered injuries and damages, in an amount to be shown at trial, but including moving and relocation expenses, undue hardship, great emotional distress, humiliation, embarrassment, inconvenience, and loss of enjoyment of life, which entitles her to compensatory and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter an ORDER that:

1.     Declares that the actions of Defendants described above constitute a violation of the Fair Housing Act, as amended, 42 U.S.C. § 3601, et seq, and Iowa Code § 216 et seq.;

2.     Enjoins Defendants, including officers, employees, agents, successors, assigns, and all other persons in active concert or participation with Defendants, from violating any provision of the Fair Housing Act, as amended, 42 U.S.C. § 3601, et seq., and Iowa Code § 216 et seq.;

3.     Requires Defendants to take such affirmative steps as may be necessary to eliminate the effects of its unlawful practices described herein;

4.     Awards Plaintiff monetary damages including damages for mental and

emotional distress, pursuant to 42 U.S.C. § 3613(c)(1) and Iowa Code § 217A(6);

5. Awards Plaintiff punitive damages pursuant to 42 U.S.C. § 3613(c)(1) and Iowa Code § 217A(6) and § 668A.1;

6. Awards Plaintiff reasonable costs, expenses and attorney's fees pursuant to 42 U.S.C. § 3613(c)(2) and Iowa Code § 217A(6); and

7. Declares that Defendants are in breach of the Lease with Plaintiff and have specifically breached the implied covenant of quiet and peaceable enjoyment;

8. Awards Plaintiff compensatory and punitive damages for the loss incurred as a result of Defendants' breach of the Lease provisions and the covenant of quiet enjoyment, including attorney's fees and costs and expenses relating to this litigation.

9. Plaintiff prays for such additional relief as the interests of justice may require.

Plaintiff hereby requests a jury trial.

## PLACE OF TRIAL

The Plaintiffs request jury trial of this matter in the City of Council Bluffs, Nebraska.

Dated this 22nd day of November, 2013,

        STACEY C. DELANCEY, Plaintiff,

        By: /s/ Todd A. West_____
             Todd A. West, #26681
        of   Law Office of Todd West
             P.O. Box 4703
             Omaha, NE 68104
             Phone: (402) 614-0185
             Email: toddwestlaw@gmail.com